UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 13-50115-01 & -02 |
| Plaintiff, | |
| vs. | **ORDER GRANTING MOTION TO JOIN AND GRANTING IN PART AND DENYING IN PART DEFENDANTS'** |
| SHIRLEE ANN BRADFORD and MISTY DAWN BRADFORD, | **MOTION TO COMPEL** [DOCKET NOS. 26 & 28] |
| Defendants. | |

**INTRODUCTION**

Defendant Shirlee Ann Bradford (hereinafter "Shirlee"), is before the court on an Indictment charging her and her daughter, Misty Dawn Bradford (hereinafter "Misty"), along with other unnamed co-conspirators, with conspiracy to distribute cocaine, a Schedule II controlled substance. See Docket No. 1. Shirlee moves the court for an order compelling the government to disclose any evidence or information that could be used to impeach its witnesses. See Docket No. 26. Misty moves to join Shirlee's motion to compel. See Docket No. 28. The government responded by agreeing to provide such impeachment material two weeks prior to trial, but otherwise resisting the motion to compel. See Docket No. 29. The Chief District Judge, the Honorable Jeffrey L. Viken, referred these motions to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A) (2012). See Docket No. 30.

## FACTS

The facts which are relevant to the pending motions are set forth below. Shirlee and Misty are charged with Conspiracy to Distribute a Controlled Substance. Docket No.1. The indictment charges that beginning at a time no later than 2004 and continuing until on or about September 24, 2013 (the date of the indictment) both Shirlee and Misty knowingly and intentionally participated in a conspiracy to distribute cocaine. Id. Both were arrested on October 1, 2013. See Docket Nos. 13, 17.

On November 13, 2013 counsel for Shirlee filed a motion to compel the government's disclosure of Giglio material and other exculpatory evidence.[1] Docket No. 26. Specifically, counsel requested this court to compel the government to disclose:

> (1) un-redacted copies of all discovery documents previously provided to the defense, including un-redacted names of all cooperating witnesses and potential witnesses whose names have been redacted from investigative interview reports;
>
> (2) copies of all proffer and cooperation agreements involving said cooperating witnesses and witnesses; [and]
>
> (3) complete criminal histories of those cooperating witnesses.

Id. at 1. One day later, on November 14, 2013, counsel for Shirlee filed a memorandum in support of the motion to compel. Docket No. 27. On

---

[1] Shirlee alleges that, to date, the government has provided approximately 493 pages of discovery material, 285 pages of which are entirely blacked out and 208 pages of the remaining discovery redact the identities of the people alleging to have purchased drugs from Shirlee. See Docket No. 26 at 2. The government did not object to this characterization of the discovery material.

November 15, 2013, counsel for Misty filed a motion for joinder with Shirlee's motion to compel disclosure of <u>Giglio</u> material and other exculpatory evidence. Docket No. 28.

In support of her motion, Shirlee filed samples of the heavily redacted discovery provided by the government to her. <u>See</u> Docket No. 26-3. In general, that discovery shows reports from unnamed witnesses who informed the government of purchases of cocaine from defendants or by defendants from a supplier on numerous occasions at various highly detailed descriptions. The names of the witnesses are redacted, but the date that the witness' report was given is indicated in the discovery. Amounts of cocaine exchanged and purchase prices paid are also given in some passages. Some names of alleged co-conspirators are detailed in the discovery as well.

On November 20, 2013, the government filed its memorandum in opposition to Shirlee's motion to compel. Docket No. 29. In its memorandum in opposition, the government rejected the entirety of that motion. <u>See</u> <u>id.</u> However, the government stated that it would "turn over unredacted [sic] copies of the memorandum of interviews of testifying witnesses, their criminal history, any offers of immunity or consideration, and other impeachment material *two weeks prior to trial.*"[2] Docket No. 29 at 4 (emphasis added).

---

[2] The government parenthetically noted that, "[w]itnesses or evidence are sometimes developed in the days prior to trial, often a result of final trial preparation. The information developed at a late stage will be provided as soon as practicable." Docket No. 29 at 4.

A jury trial in this matter is currently scheduled for March 11, 2014. Docket No. 18. Shirlee's and Misty's motion to compel is examined below.

**DISCUSSION**

**A.     Disclosure Pursuant to Brady and Giglio**

"The Due Process Clause of the Fifth Amendment requires the government to disclose to the accused favorable evidence that is material to guilt or punishment and not otherwise available to the defendant." See United States v. Santisteban, 501 F.3d 873, 877 (8th Cir. 2007) (citing United States v. Bagley, 473 U.S. 667, 678 (1985); Brady v. Maryland, 373 U.S. 83, 87 (1963)). "To prove a [Brady] violation, the defendant must show that the evidence was both favorable and material, and that the government suppressed the evidence." Id. at 877 (citing United States v. Barraza-Cazares, 465 F.3d 327, 333 (8th Cir. 2006)). "The government has suppressed evidence when it was otherwise unavailable to the defendant, and the prosecution failed to disclose the evidence in time for the defendant to use it." Id. at 988 (citing Barraza-Cazares, 465 F.3d at 334). Impeachment evidence falls under Brady when the reliability of a given witness may be determinative of a defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972). However, "Brady [and Giglio] [are] not discovery rule[s], but . . . rule[s] of fairness and minimum prosecutorial obligation." United States v. Krauth, 769 F.2d 473, 476 (8th Cir. 1985) (quoting United States v. Beasley, 576 F.2d 626, 630 (5th Cir. 1978)).

4

The government's prosecutorial duty to disclose Brady and Giglio material is derived from the Due Process clause of the Constitution. United States v. Bagley, 473 U.S. 667, 678 (1985); Brady v. Maryland, 373 U.S. 83, 87 (1963); Santisteban, 501 F.3d at 877. As such, the government is under an obligation to disclose Brady and Giglio material irrespective of Federal Rule of Criminal Procedure 16 and the Jencks Act: "where the government's obligations under Brady and [Giglio] collide with its obligations under the Jencks Act, the [Brady and Giglio obligations] must prevail." United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001) (citations omitted). Ultimately, the government is responsible for disclosing Brady and Giglio discovery to a defendant, with or without the defendant's request, if the discovery is found to be "material." See Bagley, 473 U.S. at 682; see also United States v. Agurs, 427 U.S. 97, 106–07 (1976).

The Supreme Court has held that the current Brady "materiality" test is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Bagley, 473 U.S. at 682 (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)); see also Kyles v. Whitley, 514 U.S. 419, 434 (1995). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome [of the trial]."[3]

---

[3] The court notes that although this is a retroactive materiality test, "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached." Kyles, 514 U.S. at 437.

Bagley, 473 U.S. at 682. Additionally, "[a] district court has the discretion to order [a] Brady/Giglio disclosure at any time as a matter of 'sound case management.'" United States v. Saliba, No. 08-CR-792, 2010 WL 680986, at *4 (E.D.N.Y. Feb. 24, 2010) (citations omitted).

The defendants' request for impeachment material fails to establish the requisite materiality showing necessary for a Brady/Giglio disclosure. As the Court said in Giglio itself, impeachment information regarding a government witness falls under Brady only where the reliability of that witness "may well be determinative of [the defendant's] guilt or innocence." Giglio, 405 U.S. at 154. Impeachment information constitutes Brady material where "the government's case depend[s] almost entirely on [a particular witness's] testimony." Id.

The Eighth Circuit has reversed a conviction where a witness who was the "linchpin" in the government's drug conspiracy prosecution failed to testify to the full terms of his cooperation agreement with the government, and the government did not correct the testimony. See United States v. Bigeleisen, 625 F.2d 203, 209 (8th Cir. 1980). However, where seven witnesses testified about a defendant's drug distribution activities, the Eighth Circuit refused to reverse where the government had failed to produce impeachment material as to an eighth witness. See United States v. Jeanpierre, 636 F.3d 416, 423–24 (8th Cir. 2011).

The defendants' overstate the Supreme Court's holding in Davis v. Alaska, 415 U.S. 308 (1974), in support of their motion to compel. In Davis, the

defendant, on cross-examination, was not allowed to ask the government's *crucial* witness potentially impeaching questions regarding his probationary status as a juvenile delinquent. See id. at 312, 317–19 (noting that the government's witness was the only identified person who was able to provide testimony placing the defendants "with something like a crowbar" near the area where the stolen safe was subsequently found). Accordingly, the Court's holding in Davis v. Alaska is limited to the scope of questioning a defendant is allowed to perform when cross-examining a *crucial* government witness. See United States v. Bagley, 473 U.S. 667, 676–78 (1985); see also Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004) ("Due process requires that the government disclose any promise that a *key* witness will not be prosecuted if he testifies for the government.").

Here, the defendants have made no showing that their ability to effectively cross-examine a *crucial* government witness has been impeded. Indeed, the defendants' have made no showing that there is in fact a crucial government witness. Rather, the defendants have requested the identity of *all* cooperating and potential witnesses along with *any* impeachment evidence relevant to *any* potential witness. See Docket Nos. 26, 28. Therefore, the court denies the defendants' request for Giglio material at this juncture. A review of the limited discovery provided by the government and filed by Shirlee in support of her motion indicates that this appears to be a typical drug conspiracy prosecution where numerous witnesses will testify to the defendants' involvement in cocaine

7

distribution over a long period of time, involving various other parties and quantities of drugs. Therefore, it does not appear that there is any one or handful of "key" or "crucial" government witnesses. If defendants can make a showing that there is a key witness or witnesses who are crucial to the government's case, defendants may renew their request pursuant to <u>Giglio</u>.

A cautionary note is in order. The government alone at this point is in possession of all the facts shown by its investigation. Often times the prominence of a witness's testimony at trial and its importance in securing a conviction becomes apparent only after the trial has occurred. By adopting an overly aggressive protection of the names and impeaching materials of its witnesses, the government risks violating <u>Giglio</u> and a reversal of a conviction. Therefore, the court would caution government counsel to take a liberal, defense-oriented perspective in reviewing which witnesses may be considered key to the government's case and when providing names and full impeachment information as to those witnesses.

With respect to the defendants' request for <u>Brady</u> material, the government has stated only that it "is unaware of any [<u>Brady</u>] material contained in any information provided by *non-testifying individuals that might be considered confidential informants*." Docket No. 29 at 3. (emphasis added). Notably, the government did not affirmatively state either that it has already provided the defendants' with all known <u>Brady</u> material, or that it does not possess any known <u>Brady</u> material. To the extent the government is now aware of or later

8

becomes aware of any potential <u>Brady</u> material, the court orders the government to immediately disclose the same. The court now examines defendants' motion to compel under Rule 16 and the Jenks Act.

## C. Disclosure Pursuant to the Federal Rules of Criminal Procedure and the Jencks Act

The other potential bases for defendants' motion to compel, other than the Due Process Clause, are Federal Rule of Criminal Procedure 16 and The Jenks Act. Federal Rule of Criminal Procedure 16 governs discovery and inspection in a criminal case. The rule provides in pertinent part as follows:

>  (a) Government's Disclosure
>  (1) Information Subject to Disclosure.
>  (A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.
>  (B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>  (i) any relevant written or recorded statement by the defendant if:
>  - the statement is within the government's possession, custody, or control; and
>  - the attorney for the government knows—or through due diligence could know—that the statement exists;
>  (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response

9

>                   to interrogation by a person the defendant
>                   knew was a government agent; and
> (iii) the defendant's recorded testimony before a
>                   grand jury relating to the charged offense.

See FED. R. CRIM. P. 16(a)(1)(A)–(B). Rule 16 goes on to clarify that the rule does *not* "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Id. § 16(a)(2). Furthermore, investigative reports by government agents are not discoverable under Rule 16. See FED. R. CRIM. P. 16(a)(2).

Section 3500 of Title 18 (the "Jencks Act"), provides, in pertinent part, as follows:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

See 18 U.S.C. § 3500(a) (2012). The court evaluates defendants' motion to compel under Rule 16 and The Jenks Act.

### 1. Identification of the Government's Witnesses

Under Federal Rule of Criminal Procedure 16 and the Jencks Act, the government is required to provide a defendant with copies of the defendant's own statements. However, with respect to statements made by other witnesses, the government is only required to provide copies of those statements after the witness testifies on direct examination. See FED. R. CRIM. P. 16(a)(2); 18 U.S.C. § 3500(a). Earlier disclosure of a witness' statement which would reveal the

10

identity of the cooperating witness is not required. United States v. Byrne, 83 F.3d 984, 990–91 (8th Cir. 1996). In fact, the Eighth Circuit has held that "[a]s a general rule, a defendant in a noncapital case has no right to require disclosure of government witnesses." United States v. Sandoval-Rodriguez, 452 F.3d 984, 990 (8th Cir. 2006) (quoting United States v. DeCoteau, 186 F.3d 1008, 1009 n.2 (8th Cir. 1999)) (internal quotation marks omitted) (holding that the government's disclosure of a witness three days prior to trial, where the witness testified on the second day of trial, not to constitute a Brady violation). Similarly, the government is "not required to inform [a defendant] of the address or whereabouts of any potential witness." United States v. Roach, 28 F.3d 729, 734 (8th Cir. 1994) (citations omitted). Finally, investigative reports by government agents are specifically exempted from discovery. See FED. R. CRIM. P. 16(a)(2).

In this case, the government has stated that it "will turn over unredacted copies of the memorandum of interviews of testifying witnesses, their criminal history, any offers of immunity or consideration, and other impeachment material *two weeks prior to trial.*" Docket No. 29 at 4 (emphasis added) (the court notes that un-redacted copies of all of these documents would serve to identify the government's witnesses). Both defendants will obtain the requested discovery at least two weeks prior to any of the government's witnesses testifying on direct examination. Thus, the government is in compliance with Federal Rule of Criminal Procedure 16 and the Jencks Act. Accordingly, the

government has met its prosecutorial obligation and the defendants' motion to compel disclosure of unredacted documents, which would identify the government's witnesses sooner than two weeks prior to trial, is denied as moot.[4]

With respect to the disclosure of the identity of the government's confidential informants, the Eighth Circuit has long held "that a court should not require disclosure of a[] [confidential] informant's identity unless the disclosure is *vital to a fair trial*." United States v. Weir, 575 F.2d 668, 673 (8th Cir. 1978) (emphasis added) (citing United States v. Hurse, 453 F.2d 128, 130 (8th Cir. 1972); United States v. Turchick, 451 F.2d 333, 336 (8th Cir. 1971)); see also United States v. Curtis, 965 F.2d 610, 614 (8th Cir. 1992). The Eighth Circuit has held that "[t]he defendant bears the burden of demonstrating the need for disclosure, and the court must weigh the defendant's right to information against the government's privilege to withhold the identity of its confidential informants" when determining whether disclosure is *vital to a fair trial*. United States v. Harrington, 951 F.2d 876, 877 (8th Cir. 1991) (citing Rovario v. United States, 353 U.S. 53, 59 (1957)).

Here, the government's response to Shirlee's motion does not make clear whether it considers any of the witnesses whose names have been redacted from

---

[4] The court notes that the government has indicated that some of the redactions of its discovery merely remove the name of a witness, while other redactions excise material not related to the charges against Misty and Shirlee. See Docket No. 29 at 3–4. The material that has been redacted because it is not relevant to the charges against Misty and Shirlee need not be produced, although the government must retain unredacted materials that are at issue so that an appellate court may review them. See 18 U.S.C. § 3500(c).

12

its discovery to be confidential informants. Even if they are, discovery of the identity of those confidential informants at this time is premature.

The government has indicated that it will turn over each *testifying* witness's statement and relevant impeachment material two weeks prior to trial. When the government turns over the unredacted materials to Shirlee and Misty two weeks in advance of trial, it shall specifically identify whether any names not disclosed by the government constitute confidential informants. At that time, defendants may renew their request for the identities of the informants, and the court will apply the Rovario balancing test to determine whether the informants' identities are vital to a fair trial. The court notes that "[w]here the witness is an active participant or witness to the offense charged, disclosure [of the confidential informant's name] will almost always be material to the accused's defense." Carpenter v. Lock, 257 F.3d 775, 779 (8th Cir. 2001) (quoting Devose v. Norris, 53 F.3d 201, 206 (8th Cir. 1995) (infering that where disclosure of a confidential informant's identity is material it is also vital to a fair trial). At this juncture, the court denies defendants' request for the names of witnesses, including the names of confidential informants.

### 2. Government Reports and Memoranda

With respect to the reports and memoranda prepared by the government, the Eighth Circuit has also held that "[t]he government is entitled to refuse discovery of reports or other memoranda prepared by government attorneys and agents in connection with an investigation or prosecution." United States v.

Roach, 28 F.3d 729, 734 (8th Cir. 1994) (citing Fed. R. Crim. P. 16(a)(2); United States v. Sileven, 985 F.2d 962, 966 (8th Cir. 1993) (per curiam)). Furthermore, the Eighth Circuit has held that unless the government witness signed or otherwise approved or adopted an agent's report or memorandum, the report is not considered a discoverable statement under the Jencks Act.[5] See United States v. Price, 542 F.3d 617, 621–22 (8th Cir. 2008) (citing United States v. Madrigal, 152 F.3d 777, 782 (8th Cir. 1998)).

Here too, the government stated that it will provide the defendants with "unredacted copies of the memorandum of interviews of testifying witnesses . . . two weeks prior to trial." Docket No. 29 at 4. The disclosure of such memoranda, if disclosure is required under the Jencks Act, two weeks in advance of trial satisfies the government's obligation. Accordingly, the defendants' motion to compel disclosure of the government's unredacted reports and memoranda of interviews with testifying witnesses at the present time is

---

[5] Under the Jencks Act, a "statement" is defined as:

    (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

    (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

    (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

denied. Furthermore, the court notes that neither Shirlee nor Misty have alleged that any of the government's witnesses signed or otherwise adopted or approved the FBI "302" investigative reports, see Docket No. 27 at 2, which would cause them to be a discoverable "statement" under the Jencks Act. See 18 U.S.C. § 3500(e).

### 3. Witness Criminal History Records

With respect to the criminal records of government witnesses, the Eighth Circuit has held that the criminal records of the government's witnesses are not discoverable. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976) (citing Hemphill v. United States, 392 F.2d 45, 48 (8th Cir. 1968)). Here, the government has stated that it will provide the defendants with the requested criminal history records two weeks prior to trial. See Docket No. 29 at 4. Thus, there is no basis for the court to order the government to provide those criminal histories at this juncture, unless required to do so under Giglio, as discussed earlier. Accordingly, the defendant's motion to compel disclosure of the criminal histories of the government's witnesses is denied as moot.

## CONCLUSION

It is hereby

ORDERED that Misty Dawn Bradford's motion to join Shirlee Ann Bradford's motion to compel [Docket No. 28] is granted. It is further

ORDERED that Shirlee Ann Bradford's and Misty Dawn Bradford's motion to compel the government to disclose Giglio material and other exculpatory

15

evidence [Docket No. 26] is granted in part and denied in part in accordance with this opinion. Any <u>Brady</u> material shall be provided to defendants immediately. The balance of the motion to compel is denied.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. <u>See</u> FED. R. CRIM. P. 58(g)(2), 59(a). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. FED. R. CRIM. P. 59(a). Objections must be timely and specific in order to require review by the district court.

Dated December 5, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE